# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MUHAMMED GULEN; NECDET GULEN; AYSE GULEN; GULSUN SUDE GULEN § § § §<br><br>*Plaintiffs,*<br><br>v.<br><br>ANTHONY J. BLINKEN, U.S. SECRETARY OF STATE; U.S. EMBASSY ANKARA; DEPARTMENT OF STATE KENTUCKY CONSULAR CENTER<br><br>*Defendants.* | Civil Action No. 4:22-CV-790<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Emergency Motion for Hearing, Temporary Restraining Order, and Preliminary Injunctive Relief (Dkt. #12). Having reviewed the motion and relevant pleadings, the Court finds that the motion should be **DENIED**.

### BACKGROUND

Plaintiffs Necdet Gulen, Ayse Gulen, and Gulsun Sude Gulen were selected for the United States Department of State's (the "State Department") diversity visa lottery program for the fiscal year 2022. By statute, their eligibility to receive diversity visas expires on September 30, 2022. The U.S. Embassy in Ankara, Turkey has not processed Plaintiffs' supporting documents or scheduled their consular interview appointments—both of which are prerequisites to Plaintiffs obtaining a diversity visa. Accordingly, Plaintiffs ask the Court to order Defendants to schedule their consular interviews before the end of the fiscal year.

**I.    The Diversity Visa Program**

Under the Immigration and Nationality Act ("INA"), Congress provides for up to 55,000

diversity visas to be distributed each fiscal year to foreign nationals from countries with "historically low levels of immigration to the United States." *Nishihata v. Blinken*, No. CV 21-2173, 2021 WL 4476750, at *1 (D.D.C. Sept. 30, 2021) (citing 8 U.S.C. §§ 1151(e), 1153(c)). Eligible candidates enter a lottery held once each fiscal year. 8 U.S.C. § 1153(c); 22 C.F.R. § 42.33 (describing the lottery system and its eligibility requirements). Each year, millions of potential candidates enter the diversity visa lottery for a chance to apply for one of the 55,000 allotted visas. *Gomez v. Trump ("Gomez I")*, 485 F. Supp. 3d 145, 159 (D.D.C. 2020) ("Demand regularly outstrips supply: in Fiscal Year 2018 there were approximately 14.7 million qualified entries.").

Those fortunate enough to "win" the visa lottery are referred to as "selectees." The selectees, and their family members (referred to as "derivative beneficiaries"), must then "submit an application and various documents to be eligible for a visa number," which can be used only during the fiscal year for which the selectee applied. *Almaqrami v. Pompeo*, 933 F.3d 774, 776–77 (D.C. Cir. 2019). Critically, "[t]hose selected for the diversity visa program are not guaranteed to receive a visa—only the opportunity to apply for one." *Pushkar v. Blinken*, No. CV 21-2297, 2021 WL 4318116, at *2 (D.D.C. Sept. 23, 2021) (quoting *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 3 (D.D.C. 2017)).

In an effort to use the full allocation of 55,000 diversity visas, the U.S. Department of State "over selects" lottery participants each year. (Dkt. #16, Exhibit D ¶ 4). For fiscal year 2022, there are 63,753 selectees, accounting for 118,513 potential applicants (including derivative beneficiaries), all of whom are vying for the 55,000 allocated diversity visas. (Dkt. #16, Exhibit D ¶¶ 3–4).

To obtain a diversity visa, selectees must complete a consular interview. *Pushkar*, 2021 WL 438116, at *1. Each selectee receives a "rank order" that determines the order in which their

interview may be scheduled. *See* 22 C.F.R. § 42.33(b)–(d). The availability of interview appointments may also depend on "the available resources and competing demands of consulates in an applicant's country of residence." *Pushkar*, 2021 WL 438116, at *1. Once a selectee is scheduled for an interview, their application is then "reviewed and adjudicated by a consular officer." *See* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer.").

Those selectees who are not scheduled to interview prior to the end of the fiscal year are, unfortunately, unable to obtain a diversity visa. *Gomez I*, 485 F. Supp. 3d at 159. "Because the diversity visa program restarts each fiscal year, consular officers may not issue diversity visas after midnight on September 30 of the [fiscal year]." *Almaqrami*, 933 F.3d at 777; *see also* 22 C.F.R. § 42.33(a)(1). Each year, this fiscal-year limitation "cause[s] many an application to fail, because it means that bureaucratic inertia or foul-ups have the same effect as affirmative decisions that applicants are ineligible." *Shahi v. United States Dep't of State*, 33 F.4th 927, 928 (7th Cir. 2022).

## II.     Factual Background

Plaintiff Necdet Gulen is a citizen of Turkey who was selected for the fiscal year 2022 diversity visa lottery. (Dkt. #1 ¶ 14). Plaintiff Necdet Gulen filed his diversity visa application on October 30, 2020, and he was selected through the visa lottery on May 8, 2021 (Dkt. #1 ¶ 13–14). Following his selection, Plaintiff Necdet Gulen received rank order number 14,136 (Dkt. 1 ¶ 16). His assigned consular processing center is the United States Embassy in Ankara, Turkey (Dkt. 1 ¶ 7). Although he has completed the necessary paperwork, to date, the U.S. Embassy in Ankara has not scheduled Plaintiff Necdet Gulen or his derivative beneficiaries, Plaintiffs Ayse Gulen or Gulsun Sude Gulen, for a consular interview (Dkt. 1 ¶ 18).

As of September 5, 2022, the State Department has scheduled 1,284 selectees, accounting

for 2,469 prospective applicants, for consular interviews at the U.S. Embassy in Ankara (Dkt. #16, Exhibit D ¶ 18).  Moreover, as of September 5, 2022, there are 1,157 selectees who have also completed the necessary paperwork and are ready to be scheduled for a consular interview at the U.S. Embassy in Ankara (Dkt. #16, Exhibit D ¶ 19).  Of those 1,157 selectees, 402 are ahead of Plaintiffs in the scheduling order (Dkt. #16, Exhibit ¶ 19).

### III.  Procedural Background

Plaintiffs filed their complaint in the United States District Court for the Northern District of Texas on September 8, 2022 (Dkt. #1).  Through a joint motion to change venue, the parties transferred this case to this Court on September 13, 2022 (Dkt. #8).  In their complaint, Plaintiffs allege that Defendants have unlawfully withheld and unreasonably delayed the adjudication of their visa application in violation of the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 555(b).

On September 14, 2022, Plaintiffs filed an Emergency Motion for Hearing, Temporary Restraining Order, and Preliminary Injunctive Relief seeking an order compelling Defendants to schedule a consular interview for Defendants and to reserve diversity visas for Plaintiffs past the end of the fiscal year (Dkt. #12 ¶ 3).  Defendants filed their Response in Opposition to Plaintiffs' Motion for Hearing, Temporary Restraining Order and Preliminary Injunction (Dkt. #16).  The Court held a hearing on Plaintiffs' Motion on September 21, 2022.

## LEGAL STANDARD

A temporary restraining order is an extraordinary remedy, which should be granted only when the party seeking relief clearly carries the burden of persuasion.  *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).  A movant seeking emergency injunctive relief must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat

that he will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

The movant has the burden of introducing sufficient evidence to justify the granting of a preliminary injunction or temporary restraining order. *PCI Transp.*, 418 F.3d at 546. The party seeking relief must satisfy a cumulative burden of proving each of the four elements before a temporary restraining order or preliminary injunction can be granted. *Id.* at 545. Therefore, denial of a temporary restraining order will be upheld where the movant fails to sufficiently establish one of the four criteria. *Hay v. Univ. of Texas Med. Branch*, 689 F. App'x 298, 299 (5th Cir. 2017) (per curiam).

**ANALYSIS**

I.  **Plaintiffs' Standing**

Before reaching the merits of Plaintiffs' claims, the Court first addresses Defendants' argument that Plaintiffs lack standing to assert claims for injunctive relief here. Defendants argue that Plaintiffs lack standing to assert their APA claims and that Plaintiff Muhammed Gulen is outside the zone of interests served by the diversity visa program (Dkt. #12 at pp. 15–18).

At the outset, the Court finds that Plaintiffs Necdet Gulen, Ayse Gulen, and Gulsun Sude Gulen have standing to pursue their claims for injunctive relief. If the State Department had unlawfully withheld or unreasonably delayed Plaintiffs' visa adjudication, given the fact that Plaintiffs still have not had their interviews scheduled just a few days before the September 30 deadline, that withholding or delay would have "substantially increased the risk of harm" and left Plaintiffs with a "substantial probability of harm with that increase taken into account." *Khamrabaeva v. Blinken*, No. 22-CV-1219, 2022 WL 4446387 at *5 (D.D.C. Sept. 24, 2022)

5

(citing *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007)). This harm could potentially be redressed by an order directing the State Department to adjudicate Plaintiffs' applications prior to the September 30 deadline or to preserve unused visas for that purpose if those adjudications are not complete by September 30. *Gomez I*, 485 F. Supp. 3d at 205 (ordering the State Department to adjudicate diversity visas previously ordered reserved for plaintiffs beyond the September 30 deadline).

Having determined that Plaintiffs Necdet Gulen, Ayse Gulen, and Gulsun Sude Gulen have standing to pursue their claims, the Court need not address Defendants' argument that Plaintiff Muhammed Gulen lacks standing here. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n. 11 (5th Cir. 2008); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. 2021) ("If one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case.") (cleaned up).

**II.     Plaintiffs' Claims for Injunctive Relief**

Plaintiffs seek injunctive relief under two statutory causes of action: (1) the Mandamus Act, 28 U.S.C. § 1361, and (2) the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). The Court addresses each of these causes of action in turn. For the reasons set forth below, the Court concludes that Plaintiffs have failed to carry their burden of demonstrating a substantial likelihood of success on the merits of their claims.

   **A.     Plaintiffs' Mandamus Act Claim**

Plaintiffs seek relief under the Mandamus Act, alleging that "Defendants have a clear ministerial duty to adjudicate a benefit application" (Dkt. #12 ¶ 27). Mandamus is a drastic remedy that is proper only when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d

757, 768 (5th Cir. 2011). In a mandamus action, it is a "threshold requirement" that the government agency or official must have a "clear duty to act." *See, e.g.*, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 190 (D.C. Cir. 2016). Mandamus relief is not available to review the discretionary acts of government officials and agencies. *See, e.g.*, *Newsome v. E.E.O.C.*, 301 F.3d 227, 231 (5th Cir. 2002). "In short, mandamus does not create or expand duties, but merely enforces clear, non-discretionary duties already in existence." *Wolcott*, 635 F.3d at 768.

Defendants argue that there is no clear, non-discretionary duty here because nothing in the INA requires the State Department to schedule a particular selectee for an interview appointment within a set time frame (Dkt. #16, pp. 18–19). Indeed, Plaintiff can cite no statute or regulation that bestows upon the State Department a non-discretionary duty to schedule or adjudicate an individual selectee for an interview.

To be sure, courts have held that the State Department has a non-discretionary duty to process some diversity visa applications—that is, the State Department cannot suspend the processing and issuance of all diversity visas outright. *Filazapovich*, 560 F. Supp. 3d at 235 (Mehta, J.) (holding that 8 U.S.C. § 1202(b) imposes a nondiscretionary duty on the State Department to adjudicate diversity visas). But no court has ever concluded that the State Department has a duty to process and adjudicate any individual visa application. *See, e.g.*, *Tetteh v. Blinken*, No. 22-CV-02208, 2022 WL 4464999, at *3 (D.D.C. Sept. 26, 2022) (Mehta, J.) ("The court has never said that the State Department has a duty to process and adjudicate any particular visa application."). Simply put, "the [diversity visa] program does not work that way." *Id.*

Plaintiffs also contend that they have "a clear right to a timely immigrant visa review" (Dkt. #12 ¶ 25). But the unfortunate fact is that no portion of the INA sets a time limit for administrative action. *Shahi*, 33 F.4th at 929. In fact, the fiscal-year limitation imposes no duty

7

on the State Department at all. *Id.* Rather, it "specifies the consequence of delay: the applicant's eligibility for a visa expires." *Id.*

Accordingly, Plaintiffs cannot carry their burden of establishing a likelihood of success on the merits of their claim for mandamus relief because the State Department has does not have a non-discretionary duty to adjudicate Plaintiffs' diversity visa applications.

### B. Plaintiffs' Administrative Procedure Act Claims

Plaintiffs also assert claims for unlawful withholding and unreasonable delay under the APA (Dkt. #12 ¶ 31). The APA directs courts to "compel an agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). As with mandamus relief, a plaintiff seeking relief under the APA must first satisfy the threshold requirement of showing that the agency action is legally required. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 & n.1 (2004) (noting that "the only agency action that can be compelled under the APA is action legally required" and that "a delay cannot be unreasonable with respect to an action that is not required"). Indeed, the standards for obtaining relief under the Mandamus Act and the APA's unlawful withholding provision are "essentially the same." *Verma v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-3419, 2020 WL 7495286, at *5 n. 3 (D.D.C. Dec. 18, 2020). As discussed above, Defendants are under no mandatory duty to schedule plaintiffs for a consular interview before the fiscal year deadline. *See, e.g.*, *Pushkar*, 2021 WL 438116, at *10.

As a result, because Plaintiffs cannot establish that the State Department is legally required to schedule their consular interviews prior to the end of the fiscal year, the Court finds that Plaintiffs have failed to demonstrate a reasonable likelihood of success on their APA claims.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiffs' Emergency Motion for Hearing, Temporary Restraining Order, and Preliminary Injunctive Relief (Dkt. #12) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 28th day of September, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE